1
2
3
4
5
6
7       IN THE UNITED STATES DISTRICT COURT

8       FOR THE NORTHERN DISTRICT OF CALIFORNIA

9       SAN JOSE DIVISION

10

11   Thomas A. Paulsen, et al.,                    NO. C 03-03960 JW

12              Plaintiff(s),

13        v.                                    **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT TOWERS, PERRIN, FORSTER & CROSBY, INC.'S MOTION TO DISMISS THIRD AMENDED COMPLAINT**

14   CNF, Inc., et al.,

15              Defendant(s).

16   _____/

**I.  INTRODUCTION**

17

18        This lawsuit arises out of a failed pension plan.  Plaintiffs are six alleged participants in that

19   plan.  Defendant Towers, Perrin, Forster & Crosby, Inc. ("Defendant"), the only remaining defendant

20   in this lawsuit, allegedly provided actuarial services to the plan.  Plaintiffs assert against Defendant

21   two professional negligence claims under Oregon law.  (See Third Amended Complaint, hereinafter

22   TAC, Docket Item No. 74, ¶¶ 123-40.)  Defendant moves to dismiss those claims.  (See Defendant's

23   Motion to Dismiss TAC, hereinafter Defendant's Motion, Docket Item No. 78.)  Pursuant to Civil L.R.

24   7-1(b), this Court finds it appropriate to take Defendant's Motion under submission, without oral

25   argument, for a decision based upon the parties' papers.  For the reasons set forth below, this Court

26   grants Defendant's Motion in part and denies it in part.

**II.  BACKGROUND**

27

28        In December 1996, CNF, Inc. ("CNF"), a supply chain management company that provides

*(left margin, vertical text)* **United States District Court** For the Northern District of California

trucking and air freight transportation services, spun off its long-haul trucking business unit and created Consolidated Freightways Corporation ("CFC"), "a stand-alone, unionized trucking company competing primarily in the North American less-than-truckload segment of the general freight industry." (TAC ¶ 23; <u>see also</u> TAC ¶¶ 13, 18.) As part of the spinoff, CFC established its own employee pension benefit plan called the Consolidated Freightways Corporation Plan ("CFC Plan"). (TAC ¶¶ 4, 26.) The CFC Plan grew out of CNF's employee pension benefit plan, which was called CNF Inc. Retirement Plan ("CNF Plan"). Those CNF employees who, as a result of the spinoff, became CFC employees "would also become participants in the CFC Plan and . . . the CNF Plan would transfer to the CFC Plan all its obligations owing to those participants." (TAC ¶ 27.)

From at least November 1996 onward, Defendant, a Pennsylvania corporation with its principal place of business in Pennsylvania, allegedly provided actuarial services to both the CNF and CFC Plans. (TAC ¶ 17.) Defendant allegedly provided its services to the CFC Plan during the spinoff and on an annual basis thereafter. (TAC ¶ 17, 50.) Plaintiffs allege that, from the spinoff in December 1996 through 2001, Defendant consistently determined that the CFC Plan was fully funded. (TAC ¶¶ 41, 51.) As a result, "CFC made no contributions to the CFC Plan in any of these years." (TAC ¶ 52.)

Plaintiffs are participants in the CFC Plan. (TAC ¶ 5.) They claim that, despite Defendant's calculations, the CFC Plan was actually inadequately funded. (TAC ¶¶ 131, 140.) In January 2003, CFC informed CFC Plan participants that the CFC Plan "would not have sufficient funds to pay all vested accrued benefits to all participants and beneficiaries upon Plan termination." (TAC ¶ 60.) CFC then announced "the intention of the Plan Administrator to terminate the Plan in a 'distress' termination effective March 31, 2003." (TAC ¶ 60.) In June 2003, the Pension Benefit Guarantee Corporation ("PBGC"), a government owned corporation that insures pension plans, assumed responsibility for the CFC Plan. (TAC ¶ 62.) PBGC estimated that the CFC Plan "had approximately $228 million in assets to cover approximately $504 million in vested accrued benefits." (TAC ¶ 62.)

Plaintiffs claim that Defendant breached its professional duty when it certified, at the spinoff

and thereafter, that the CFC Plan was adequately funded.  (TAC ¶ 129, 138.)  Specifically, Plaintiffs

claim that the assumptions underlying Defendant's actuarial calculations were unreasonable.  (TAC ¶

129, 138.)  Plaintiffs assert against Defendant two claims for relief under Oregon's professional

negligence law.  First, Plaintiffs claim that Defendant violated its professional duty when it certified

that the CFC Plan was adequately funded at the spinoff.  (TAC ¶ 129.)  Second, Plaintiffs claim that

Defendant violated its professional duty by miscalculating the CFC Plan's value from 1997 through

2001.  (TAC ¶ 138.)

Defendant moves to dismiss Plaintiffs' claims on three grounds.  First, Defendant argues that

the Employee Retirement Income Security Act ("ERISA") preempts Plaintiffs' state law-based claims.

(See Defendant's Motion at 9:4-12:10 and Defendant's Reply in Support of its Motion, hereinafter

Defendant's Reply, Docket Item No. 81, at 3:16-8:12.)  Second, Defendant argues that, under choice of

law principles, Plaintiffs cannot pursue claims under Oregon state law.  (See Defendant's Motion at

12:11-16:11 and Defendant's Reply at 8:14-11:7.)  Finally, Defendant argues that Plaintiffs' claims are

barred by the doctrine of law of the case.  (See Defendant's Motion at 16:13-18:6 and Defendant's

Reply at 11:9-13:9.)

### III.  STANDARDS

A motion to dismiss brought under FED. R. CIV. P. 12(b)(6) ("Rule 12(b)(6)") tests the legal

sufficiency of a complaint.  De La Cruz v. Tormey, 582 F.2d 45, 48 (9th Cir. 1978).  Accordingly, any

defect must appear on the complaint's face.  "[T]he court cannot consider material outside the

complaint (e.g., facts presented in briefs, affidavits or discovery materials)."  WILLIAM W.

SCHWARZER, A. WALLACE TASHIMA & JAMES M. WAGSTAFFE, FEDERAL CIVIL PROCEDURE BEFORE

TRIAL § 9:211 (2004) (citing Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir.

2001)).

In addition, all allegations of material fact in the complaint must be accepted as true and

construed in the light most favorable to the plaintiff.  See Enesco Corp. v. Price/Costco Inc., 146 F.3d

1083, 1085 (9th Cir. 1998) (citing Argabright v. United States, 35 F.3d 472, 474 (9th Cir. 1994)).

Conley v. Gibson, 355 U.S. 41 (1957), sets forth the strict standard for granting a Rule 12(b)(6) motion to dismiss.  A Rule 12(b)(6) motion to dismiss must not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Id. at 45-46.  As the Ninth Circuit has observed, "The [Rule 12(b)(6)] motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted."  Gilligan v. Jamco Develop. Corp., 108 F.3d 246, 249 (9th Cir. 1997).

## IV.  DISCUSSION

**A.  ERISA Does Not Preempt Plaintiff's State Law-Based Professional Negligence**

First, Defendant argues that ERISA preempts Plaintiffs' state law-based professional negligence claims.  (See Defendant's Motion at 9:4-12:10 and Defendant's Reply in Support of its Motion, hereinafter Defendant's Reply, Docket Item No. 81, at 3:16-8:12.)  To support its argument, Defendant heavily relies upon a Sixth Circuit case, United Steelworkers of America, AFL-CIO, CLC v. United Engineering, Inc., 52 F.3d 1386 (6th Cir. 1995).  United Steelworkers is inapposite.  ERISA, therefore, does not preempt Plaintiffs' claims.

**1.  Defendant Heavily Relies Upon United Steelworkers**

Defendant cites United Steelworkers for the proposition that "where a pension plan has been distress-terminated under ERISA and the PBGC has been appointed as statutory trustee . . . [,] Plan participants are preempted from pursuing private claims to recover non-guaranteed benefits." (Defendant's Reply at 3:20-24.)  Defendant argues that, since the CFC Plan was distressed-terminated and since the PBGC was appointed statutory trustee of the CFC Plan, Plaintiffs' professional negligence claims are preempted.  Defendant, however, overstates United Steelworkers.

United Steelworkers involved a lawsuit between a union and an employer.  Under a collective bargaining agreement between the union and the employer, the employer assumed certain pension obligations and agreed to "provide pension benefits even if the pension plan terminated and the funds in the plan were insufficient to pay the benefits."  United Steelworkers, 52 F.3d at 1388.  The plan failed and the employer applied to PBGC for a distress termination.  Id.  Shortly thereafter, two class

4

action lawsuits were filed against the employer.  Id. at 1388-89.  Both lawsuits were settled in a joint agreement, under which the employer agreed to pay part of its employees' claims for nonguaranteed benefits.  Id. at 1389.  The settlement amount, however, was insufficient to pay all of the employees' nonguaranteed benefits.  Id.  Consequently, the union filed suit under Labor Management Relations Act (LMRA) § 301, 29 U.S.C. § 185, to enforce the collective bargaining agreement.  Id.

ERISA law at that time was in a state of flux.  Prior to 1986, ERISA required only that employers be liable for the lesser of:  the amount of unfunded *guaranteed* benefits *or* 30% of the employer's net worth.  Id. at 1391.  Employers were not liable for *nonguaranteed* benefits, such as those at issue in United Steelworkers.  Id.  Federal courts perceived this gap and eventually recognized a federal common law action under LMRA § 301 "allowing employees to directly sue their employers to recover nonguaranteed benefits."  Id.  The union in United Steelworkers filed suit under this provision.

In 1986, and again in 1987, Congress amended ERISA to protect, for the first time, employees' *nonguaranteed* benefits.  Id.  In fact, the 1987 amendment promulgated an elaborate formula by which to calculate the amount of nonguaranteed benefits that PBGC must pay.  Id.  The issue in United Steelworkers was "whether the 1986 and 1987 amendments to ERISA preempt[ed] a cause of action under the LMRA by employees. . . to recover nonguaranteed pension benefits.  Id. at 1388.  The court held that they did.  Id. at 1394 (concluding that "suits under § 301 of the [LMRA] to recover nonguaranteed benefits from plan sponsors are precluded" because "Congress has preemptively occupied a field previously addressed by federal common law").  The court reasoned that, "the language [of the ERISA amendments] strongly implies that Congress intended the PBGC to be the sole source of recovery of payments to employees."  Id. at 1393.  Defendant relies upon this language to support its own preemption argument.  (See Defendant's Reply at 4:2-5.)

**2.  United Steelworkers Is Inapposite**

Central to United Steelworkers's reasoning, however, is the fact that the defendant in that case was an employer (i.e., a plan sponsor).  For example, United Steelworkers held that ERISA

5

preempted the union's LMRA claim against the employer because "ERISA states that the liability of an *employer* . . . to the PBGC 'shall be the *total* amount of the unfunded benefit liabilities . . . .'" Id. (quoting 29 U.S.C. § 1362(b)(1)(A)) (first emphasis added); see also id. at 1394 ("As the court in In re Adams[, 129 B.R. 662 (W.D. Okla. 1991),] stated, if plan participants make claims directly against their *employer*, the purposes of ERISA will be defeated") (emphasis added); id. ("Allowing plan participants to bring suit directly against the *plan sponsor* also raises the possibility of double recovery") (emphasis added); id. at 1389 ("The court relied on the explicit language of 29 U.S.C. § 1362(b)(1)(A) . . . , which states that *employers* are liable *to the PBGC* for 'the total amount of unfunded benefit liabilities'") (first emphasis added) (referring to the district court's opinion, which was wholly affirmed); id. ("'If individual employees could sue the *employer* directly for non-guaranteed benefits, the priority scheme set out in ERISA for payment of claims by the PBGC would be rendered meaningless'") (quoting the district court's opinion, which was wholly affirmed).

Here, Defendant is neither an employer nor a plan sponsor.  Defendant merely is a third-party corporation that provided actuarial services to the CFC Plan.  This distinction is, in this Court's opinion, a critical one.  As the Ninth Circuit noted in General Am. Life Ins. Co. v. Castonguay, 984 F.2d 1518, 1521 (9th Cir. 1993),

> The key to distinguishing between what ERISA preempts and what it does not lies . . . in recognizing that the statute comprehensively regulates certain *relationships*:  for instance, the relationship between plan and plan member, between plan and employer, *between employer and employee* (to the extent an employee benefit plan is involved), and between plan and trustee.

(Second emphasis added); see also Geweke Ford v. St. Joseph's Omni Preferred Care Inc., 130 F.3d 1355, 1358 (9th Cir. 1997) ("A state law claim is preempted if it 'encroaches on the relationships regulated by ERISA'") (quoting Castonguay, 984 F.2d at 1522.  The court further noted that, "ERISA doesn't purport to regulate those relationships where a plan operates just like any other commercial entity--for instance, the relationship between the plan and its own employees, or the plan and its insurers or creditors, or the plan and the landlords from whom it leases office space." Castonguay, 984 F.2d at 1522.  Unlike United Steelworkers, where the relationship between the plaintiffs and

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   defendant was one between employees and employer, here, the relationship between Plaintiffs and

2   Defendant is one between employees and a third-party corporation that provided actuarial services to

3   the employees' plan.  This is not a relationship that ERISA comprehensively regulates.  See id. at 1521

4   (listing the types of relationships that ERISA regulates).  In any event, Plaintiffs' claims arise out of

5   professional negligence law, an area traditionally regulated by the states.  See Painters of Philadelphia

6   Dist. Council No. 21 Welfare Fund v. Price Waterhouse, 879 F.2d 1146, 1152 (3d Cir. 1989)

7   ("[S]tate law has traditionally prescribed the standards of professional liability").  As the Ninth

8   Circuit has noted, "In cases of uncertainty, our analysis is guided by a rebuttable 'presum[ption] that

9   Congress did not intend to pre-empt areas of traditional state regulation."  Local Union 598, Plumbers

10  & Pipefitters Indus. Journeymen & Apprentices Training Fund v. J.A. Jones Constr. Co., 846 F.2d

11  1213, 1220 (9th Cir. 1988) (quoting Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 740 (1985)).

12  Accordingly, this Court concludes that United Steelworkers is inapposite and that ERISA does not

13  preempt Plaintiffs' claims.  See Fluid Components Intl. v. Corporate Benefit Consultants, 977 F. Supp.

14  1046, 1051 (S.D. Cal. 1997) ("[I]t does not appear that Congress intended [for ERISA] to foreclose

15  the appropriate state laws of general application created to provide redress for professional

16  negligence"),

17  **B.  Under California's Choice of Law Principles, Oregon Law Should Apply to Oregon Plaintiffs and California Law Should Apply to California Plaintiffs**

18
19         Second, Defendant argues that, under choice of law principles, Plaintiffs cannot pursue claims

20  under Oregon state law.  (See Defendant's Motion at 12:11-16:11 and Defendant's Reply at 8:14-

21  11:7.)  This Court agrees with Defendant, but only partially.  To facilitate its analysis, this Court will,

22  for the purposes of this section, divide Plaintiffs into two groups:  (1) Plaintiffs Robert M. Bowden

23  and Robert Newell (collectively "Oregon Plaintiffs"), and (2) Plaintiffs Thomas A. Paulsen, Edward

24  L. Frazee, Chester Madison, and Lloyd Michael O'Connell III (collectively "California Plaintiffs").

25                 **1.  Oregon Plaintiffs' Professional Negligence Claims Under Oregon Law Are Viable**

26         Oregon Plaintiffs reside in Oregon and resided in Oregon at all times relevant to this lawsuit.

27  (TAC ¶¶ 7, 10.)  As this Court held in its Order Granting in Part and Denying in Part Defendant's

28                                                              7

Motion to Dismiss Second Amended Complaint, their professional negligence claims under Oregon law are viable.  (See Order Granting in Part and Denying in Part Defendant's Motion to Dismiss Second Amended Complaint, hereinafter January 18, 2005 Order, Docket Item No. 71, at 8:21-22 ("[T]his Court holds that Plaintiffs' Second Amended Complaint states a claim for professional negligence under Oregon law").)  Defendant argues that this Court cannot "apply a foreign law simply because that foreign law is more generous or would afford a greater recovery than is permitted under California law."  (Defendant's Motion at 14:15-16.)  This Court is doing no such thing.  This Court concluded that Plaintiffs' Oregon law claims were viable only after a vigorous application of California's choice of law principles.  (See January 18, 2005 Order at 4:7-23, 6:2-8:22.)

In particular, this Court observed that, under California law, a professional supplier of information only owes a duty of care to her client.  (See January 18, 2005 Order at 6:7-14.)  By contrast, this Court observed that, under Oregon law, a professional supplier of information owes a duty of care not only to her client but also to third-party intended beneficiaries.  (See January 18, 2005 Order at 6:15-7:8.)  The policy underlying California law "is to save California professionals from excessive liability" and the policy underlying Oregon law "is to promote compensation to Oregon residents."  (January 18, 2005 Order at 7:18, 8:2-3.)  In applying these policies to the facts of this case, this Court concluded that "California apparently has no interest in applying its law to this case" because no California professionals are involved.  (January 18, 2005 Order at 8:5-11.)  On other hand, "Oregon apparently has some interest in applying its . . . laws to this case" because Oregon Plaintiffs are Oregon residents.  (January 18, 2005 Order at 8:11-15.)  "This situation is one which commentators call a 'false conflict.'  Although California's law and Oregon's law ostensibly conflict, only Oregon has an apparent interest in applying its law to this case."  (January 18, 2005 Order at 8:16-10 (citations omitted).)  This Court reaffirms its January 18, 2005 Order, particularly as it relates to Oregon Plaintiffs.

**2.  California Plaintiffs' Professional Negligence Claims Under Oregon Law Are Not Viable**

With respect to California Plaintiffs, however, this Court reaches a different conclusion.  The

8

1   "conflict" between Oregon law and California law is not a "false conflict" with respect to California

2   Plaintiffs--as it is with respect to Oregon Plaintiffs.  When analyzed with respect to California

3   Plaintiffs, the "conflict" between Oregon law and California law is, what choice of law scholars call,

4   an "unprovided for" case.  As Professor Larry Kramer has described the "unprovided for" case:

5   > [Under Professor Brainerd Currie's 'governmental interest analysis' approach to choice of
    > law,] [t]here is . . . a . . . possibility [that] [n]o state is interested in having its law applied.  In

6   > such cases, the multistate contacts are arranged in such a fashion that the reason each state
    > ordinarily wants its law applied is absent.  For example, suppose that a plaintiff from state A

7   > has an accident with a defendant from state B.  If the policy underlying state A's law protects
    > defendants and the policy underlying state B's law protects plaintiffs, neither state would have

8   > an interest in applying its law.  Currie called this an 'unprovided-for case[.]'

9   Larry Kramer, *The Myth of the "Unprovided-For" Case*, 75 Va. L. Rev. 1045, 1045-46 (1989); see

10   also (January 18, 2005 Order at 4 n.3 (noting that California's approach to choice of law largely is

11   premised upon Professor Brainerd Currie's "governmental interest analysis" approach)) and Symeon

12   Symeonides, *Revolution and Counter-Revolution in American Conflicts Law:  Is There a Middle*

13   *Ground?*, 46 Ohio St. L.J. 549, 564 n.119 ("The unprovided for case is the converse of a true conflict

14   in the sense that, in this case, no one of the involved states wants to have its law applied").

15         Here, Oregon law protects Oregon residents and California law protects California

16   professionals.  (See, supra, Part IV.B.1.)  Oregon has no interest in applying its law to California

17   Plaintiffs' because California Plaintiffs are not Oregon residents.  Similarly, California has no interest

18   in applying its law to Defendant because Defendant is not a California professional.  Thus, neither

19   Oregon nor California has an interest in applying its law to California Plaintiffs' claims.  This is an

20   "unprovided for" case.  In California, "when *neither* jurisdiction has an interest in the application of

21   its rule of law, California applies its own law."  Marsh v. Burrell, 805 F. Supp. 1493, 1497 (N.D.

22   Cal. 1992) (citing Hurtado v. Superior Court, 11 Cal. 3d 574, 581 (1974)); see also David P. Currie,

23   Herma Hill Kay & Larry Kramer, Conflict of Laws 167 (6th ed. 2001) (noting that, in an

24   "unprovided-for" case, Professor Currie advocated the application of forum law) (citing B. Currie,

25   Selected Essays on the Conflict of Laws 153-56 (1963)).  Thus, as to California Plaintiffs'

26   professional negligence claims against Defendant, California law must apply.  As a matter of law,

27

28            9

**United States District Court**
For the Northern District of California

1  then, California Plaintiffs cannot state claims under Oregon law.  Accordingly, this Court dismisses

2  California Plaintiffs from this lawsuit.

3  **C.  The Doctrine of Law of the Case Is Inapplicable Here**

4      Finally, Defendant argues that Plaintiffs' claims are barred by the doctrine of law of the case.

5  (See Defendant's Motion at 16:13-18:6 and Defendant's Reply at 11:9-13:9.)  "Under the doctrine of

6  'law of the case,' a court is generally precluded from reconsidering an issue that has already been

7  decided by the same court. . . ."  Rebel Oil Co., Inc. v. Atlantic Richfield Co., 146 F.3d 1088, 1093

8  (9th Cir. 1998).  Defendant argues that, because this Court previously dismissed Plaintiffs'

9  professional negligence claims under California law, "[l]aw of the case bars Plaintiffs' attempt to re-

10  plead their identical substantive professional negligence claims based on Oregon law . . . ."

11  (Defendant's Motion at 17:22-23.)  This Court rejects Defendant's argument.

12      The doctrine of law of the case "is not a limitation of a tribunal's power, but rather a guide to

13  discretion."  Rebel Oil, 146 F.3d at 1093.  As the Ninth Circuit noted, the doctrine precludes a court

14  from "reconsidering *an issue that has already been decided*."  Id. (emphasis added).  When this Court

15  dismissed Plaintiffs' professional negligence claims under California law, it did so as a matter of

16  California law.  (See Order Granting Defendants' Motion to Dismiss, Docket Item No. 29, at 15:11-12

17  ("The Court finds that *under California law* Towers owed no duty to Plaintiffs and Plaintiffs were not

18  Towers' clients") (emphasis added).)  The viability of Plaintiffs' professional negligence claims under

19  California law is an issue that is separate and distinct from the viability of Plaintiffs' professional

20  negligence claims under Oregon law.  This Court has never held that Plaintiffs' professional

21  negligence claims under Oregon law fail as a matter of Oregon law, or, for that matter, fail for any

22  reason.  Accordingly, the law of the case doctrine does not apply here.

23                              **V.  CONCLUSION**

24      For the reasons set forth above, this Court grants in part and denies in part Defendant's Motion

25  to Dismiss.  This Court dismisses Plaintiffs Thomas A. Paulsen, Edward L. Frazee, Chester Madison,

26

27

28                                    10

and Lloyd Michael O'Connell III from this lawsuit.

Dated:  May 2, 2005

/s/James Ware
JAMES WARE
United States District Judge

03cv3960mtd-tac

**United States District Court**
For the Northern District of California

11

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Cassie  Springer-Sullivan cssullivan@lewisfeinberg.com
David E. Gordon dgordon@omm.com
David L. Bacon dlbacon@thelenreid.com
George A. Riley griley@omm.com
James M. Finberg Jfinberg@lchb.com
Karl  Olson ko@lrolaw.com
Lisa T. Belenky lbelenky@biologicaldiversity.org
Michael  Hallerud hallerud@thelenreid.com
Robert Edwin Mangels REM@jmbm.com
Sherwin S. Kaplan skaplan@thelenreid.com
Steven M. Tindall stindall@lchb.com
Susan J. Allison SJA@jmbm.com
Teresa S. Renaker trenaker@lewisfeinberg.com
Timothy Carl Travelstead ttravelstead@omm.com

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN MAILED TO:**

Mary Ellen Signorille
AARP Foundation Litigation
601 E. Street, NW
Washington, DC  20049

**Dated:  May 2, 2005**                    Richard W. Wieking, Clerk


                                           By:/s/JWchambers_____
                                               **Ronald L. Davis**
                                               **Courtroom Deputy**

United States District Court
For the Northern District of California